GRACEY, JUDGE:
The claimant, Nina G. Jones, born July 10, 1949, seeks damages in the amount of $125,000.00 for personal injuries. At about 5:00 a.m., on August 10, 1982, on Route 3 near Pettus, in Raleigh County, she was driving herself to work when she ran into water on the highway. She testified that the water had caused her car to hydroplane to its right; that a short stretch of highway where there was no water had allowed her to regain control and get back onto the road; that a second stretch of water on the highway had caused her car to hydroplane again, to its left; that her car went down over a bank on the left side of the road *37 and struck a tree.
Mrs. Jones was employed at a restaurant in Whitesville and was supposed to open the restaurant for business at 5:00 a.m. each day. When she did not arrive on time, a cook there telephoned Mrs. Jones' husband, Richard Lee Jones. He immediately followed her usual westerly route to Whitesville, but did not see her car. He found it, and her, as he retraced the route. He described the location of the car as being 20 feet off the highway and almost straight across from the Graybill residence. He took his wife in his car to the restaurant in Whitesville. She was transported by ambulance to Charleston Memorial Hospital and then to the Eye and Ear Clinic in Charleston where she was confined for four days. She lost two weeks' wages at $300.00 per week. Her medical expenses were in the amount of $2,529.45 at the date of hearing. Dr. Samuel A. Strickland, her attending physician, in a letter medical report dated November 3, 1982, reported that she had sustained " ... severe trauma to her left eye with secondary marked decreased vision due to optic atrophy from the left eye with vision being hand motions only to the side and the visual loss being permanent as a result of a direct blow to the left eye... ." There was also a laceration above her left eye. In describing her vision in the left eye, as a result of her accident, Mrs. Jones said she can see "Mostly light and dark. I can see very few big images, nothing that I could really make out." Her husband described her self consciousness and lack of coordination since her injury.
The Jones residence, from which Mrs. Jones had departed on the morning of her accident, was at Packsville, about 3 miles east of Whitesville. She had driven about a mile and a half to Pettus where she drove into the water on the highway, on several previous occasions, she had seen water on the highway in that vicinity after several days of rain. She said she had been unaware of any heavy rainfall the night before or overnight, before her accident. It was not raining as she drove west toward Pettus and Whitesville, but the highway was wet. It was dark. She had her headlights on, but did not see the water on the highway until she hit the first of it at a speed she estimated to be 40 to 45 miles per hour. In describing what happened, she said "...there was one place that didn't have water on the road there, and that's when I got my car straightened back up and just when I got back up on the road there then there was another big place with water in it. That was when like it hydroplaned, went out of control."
Mr. Jones described the highway, where he had found his wife that morning, as having been covered with water. Gary Delano Barker also testified about water on the highway when he stopped at the accident scene shortly after the accident, after Mrs. Jones had been taken away. He also described two different areas of water across the highway with a section of ten or fifteen feet of highway between them. He said the water in the first area was then about an inch deep and that the water in the second area was then about two and a half to three inches deep for a distance of about twenty feet.
Paul Raymond Doss, whose residence is at Pettus, near where a culvert passes beneath the highway, had seen the highway at about 6:20 a.m. as *38 he was leaving home to go to work. He described the highway as having water and trash on it. He estimated the water to be six inches deep. He also described how the culvert gets clogged up, causing water to run across the road. A few days before Mrs. Jones' accident, Mr. Doss's wife, Helen Pauline Doss, had made a telephone complaint, about water on the highway and her yard, to an office of the respondent in Charleston. Also a few days before Mrs. Jones' accident, another Pettus resident, one Cecil Browning, had complained to JoAnn McCormick, a secretary at the Whitesville Detachment of the Department of Public Safety. Ms. McCormick testified that she had passed along his complaint to the Beckley Detachment which later confirmed that the respondent's Beckley office had been notified.
The witnesses frequently using the subject stretch of highway variously estimated the number of times each year when rain water overflows the culvert and covers the highway. Respondent's witnesses found no record of cleaning the inlet or outlet or the culvert itself in a number of months prior to August 10, 1982.
Charles W. Bragg, respondent's assistant county superintendent for Raleigh County, said that they have had problems constantly when there are heavy rains in the vicinity of the subject culvert at Pettus. He said that rocks and debris from the hillside stop up the culvert.
Claude Blake, an investigator employed by respondent, had twice measured the distance along the westbound lane of the highway, from the center of the subject culvert to the middle of the Graybill residence, and stated that distance to be 670 feet. Paul Raymond Doss estimated the distance from his residence, right across the road from the culvert, to where Mrs. Jones' car came to rest, as 90 to 100 feet. Photographs in evidence suggest the distance to be as measured.
While the State is neither an insurer nor a guarantor of the safety of travellers on its highways, it does owe a duty of reasonable care and diligence in the maintenance of a highway. Parsons v. State Road Comm'n., 8 Ct.Cl. 35 (1969). The evidence in this case established that respondent knew of the culvert problem, the frequent flooding of the highway, and had received recent complaints prior to claimant's accident. The Court finds respondent negligent for its failure to take satisfactory corrective action. The Court also finds the claimant guilty of negligence in her failure to keep a proper lookout ahead and for operating her vehicle at a speed in excess of a reasonable speed under the conditions then and there existing. The Court, having determined claimant's damages to be $25,000.00, and under the doctrine of comparative negligence having apportioned 70% negligence to respondent and 30% negligence to claimant, makes an award in the amount of $17,500.00 to the claimant.
Award of $17,500.00.